# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

| | |
|---|---|
| SUMIKO COLEMAN | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 3:17CV147–HEH<br>) |
| CHARLOTTESVILLE BUREAU OF CREDITS, INC., | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION
### (Dismissing Case for Lack of Subject-Matter Jurisdiction)

THIS MATTER is before the Court on its own initiative. Plaintiff Sumiko Coleman ("Plaintiff") brings this action against Charlottesville Bureau of Credits, Inc. ("Defendant"), alleging violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (See generally Compl., ECF No. 1.)

As an affirmative defense, Defendant asserted that Plaintiff lacks standing to bring this action because she has not suffered a particularized and concrete injury. (Answer 3, ECF No. 4.) Because this calls into question whether the Court has subject-matter jurisdiction over this matter, the Court ordered the parties to submit memoranda addressing whether Plaintiff has sufficiently pleaded an injury in fact to confer standing. (ECF No. 6.)

All parties have filed memoranda supporting their respective positions. (ECF Nos. 7, 8, 10.) The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before it, and oral argument would not aid in the decisional process. E.D. Va. Local Civ. R. 7(J).

For the reasons that follow, the Court finds that it lacks subject-matter jurisdiction and

therefore must dismiss this action.

## I. BACKGROUND

Plaintiff begins her one-count Complaint by averring that "[o]n information and belief, on a date better known to Defendant, Defendant began collection activities on an alleged consumer debt from the Plaintiff." (Compl. ¶ 7.) The Complaint notes that this alleged debt was incurred as a financial obligation that was primarily for personal, family, or household purposes and that Commonwealth Lab Consultants was the original creditor. (*Id.* ¶ 8.) Though the timing is unclear from the face of the Complaint, at some point Defendant reported the debt on Plaintiff's credit report. (*Id.* ¶ 10.)

Plaintiff sent a letter to Defendant on October 28, 2016, disputing the debt. (*Id.* ¶ 11.) Several months later, on January 10, 2017, Plaintiff examined her credit report and found that Defendant had re-reported the debt, but had not listed it as being "disputed by consumer." (*Id.* ¶ 12.) As a result, Plaintiff summarily alleges that she "has been damaged" and that she "is entitled to damages in accordance with the FDCPA." (*Id.* ¶¶ 13, 16.)

However, at no point in her Complaint does Plaintiff plead with any degree of specificity *how* she has allegedly been damaged.[1]

## II. LEGAL FRAMEWORK

A bedrock constitutional principle of our Federal Government is the division of powers between its branches. As such, it is well settled that judicial power is limited to the

---

[1] In her response brief on standing, Plaintiff attempts to bolster her Complaint by stating that "she has received a lower credit score impact due to the failure of the Defendant to properly update her report" and that "[c]urrent issuers of credit to [Plaintiff] constantly peak at her credit to determine if they should continue to extend credit lines that she currently has." (Pl.'s Resp. to Def.'s Mem. on Standing 4, ECF No. 8.) She goes on to note "that the lower credit score impacts [her] in multiple facts [*sic*] including denial of credit and increased cost of insurance policies and applicable interest rates on credit cards and loans she might own." (*Id.*) From the face of her Complaint, however, Plaintiff has simply failed to set out any facts that support her allegation that she has suffered a concrete harm as a result of Defendant's conduct.

extent that federal courts may exercise jurisdiction only over "cases" and "controversies." U.S. Const. art. III, §2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). Thus, subject-matter jurisdiction requires a justiciable case or controversy within the meaning of Article III of the United States Constitution. *See Allen v. Wright*, 468 U.S. 737, 750–51 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). Standing constitutes one component of justiciability. *Lujan*, 504 U.S. at 560. Whether a plaintiff has standing presents a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (internal citation omitted).

The Supreme Court has established that the "irreducible constitutional minimum" of standing includes three elements: (1) an injury-in-fact; (2) a causal connection between the injury and the alleged misconduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61 (citations and quotation marks omitted). Because Plaintiff seeks to invoke this Court's jurisdiction, she bears the burden of establishing all three elements. *Id.* at 561. "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (quoting *Warth*, 422 U.S. at 518).

In *Spokeo*, the Supreme Court reiterated the basic tenets of the standing doctrine. *Id.* at 1547. It noted that to satisfy the injury-in-fact requirement, a plaintiff must show "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual and

3

imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citing *Lujan*, 504 U.S. at 560).

To satisfy the particularization requirement, the plaintiff "must allege a distinct and palpable injury to himself." *Warth*, 422 U.S. at 501 (citations omitted). The injury must "affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. Claims asserting "'generalized grievance[s]' shared in substantially equal measure by all or a large class of citizens . . . normally do[] not warrant exercise of jurisdiction." *Warth*, 422 U.S. at 499 (citations omitted).

Standing's concreteness requirement demands that an injury be real, not abstract. *Spokeo*, 136 S. Ct. at 1548. However, it is possible for an intangible harm to be concrete.[2] *Id.* at 1549. When determining whether such intangible harms are sufficiently concrete to satisfy Article III's requirements, Congress' "judgment is . . . instructive and important." *Id.*

In creating statutory rights of action, "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan*, 504 U.S at 578) (alteration in original). However, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* The Supreme Court has made clear that "Article III standing requires a concrete injury *even in the context of a statutory violation.*" *Id.* (emphasis added).

When a plaintiff alleges a statutory violation, she usually must plead an additional

---

[2] Examples of these intangible injuries include libel, slander, and violations of the constitutional rights to free speech and free exercise. *See Spokeo*, 136 S. Ct. at 1549 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009); *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993); Restatement (First) of Torts §§ 569, 570).

injury in order to satisfy the concreteness requirement. Concreteness can certainly be satisfied by alleging a harm—either tangible or intangible—which has already occurred or is continuing to occur. But concreteness can also be satisfied where the plaintiff faces a "risk of real harm" likely to occur in the future. *Id.*

The Supreme Court has noted that in some circumstances, however, merely pleading "the violation of a procedural right granted by statute" may be sufficient to satisfy concreteness. *Id.* This occurs in situations where the legislature has codified causes of action with intangible harms where recovery was long permitted at common law. *Id.* (citing Restatement (First) of Torts §§ 569 (libel), 570 (slander *per se* ) (1938); *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998) (access to public information); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989) (access to public information)). "[A] plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.*

However, absent this narrow exception where Congress has codified a common law intangible injury, standing only exists for a statutory violation where the plaintiff has also alleged an additional concrete harm.[3] For example, the Supreme Court noted in *Spokeo* that a consumer reporting agency may fail to provide the statutorily required notice to the user of consumer information, even if that information is entirely accurate. *Id.* at 1550. Or, the agency might provide some wholly inaccurate, yet benign, information, such as an incorrect zip code. *Id.* While both of these situations constitute statutory violations, the "victim" has no standing because the conduct does not "cause harm or present any material risk of harm."

---

[3] Though the Supreme Court in *Spokeo* highlighted this requirement specifically within the context of the FCRA, its analysis was not limited to causes of action arising under that Act. The Court finds that the Supreme Court's reasoning is readily applicable to cases alleging violations of the FDCPA as well.

5

*Id.*

It is with these principles in mind that the Court conducts its analysis.

## III. DISCUSSION

The entirety of Plaintiff's Complaint amounts to an allegation that Defendant violated various provisions of the FDCPA by failing to list her account as "disputed by consumer" when it reported the debt on her credit report in January 2017. (*See generally* Compl.) However, it appears to be undisputed that the Complaint is devoid of any reference to Plaintiff suffering any actual harm as a result of these violations. *But see supra* note 1 (detailing Plaintiff's attempt to amplify her Complaint in her response brief on standing).

Therefore, the Court concludes that Plaintiff has failed to allege any facts to support an assertion that she suffered a "concrete and particularized" harm that is "actual and imminent, not conjectural or hypothetical" to confer Article III standing. *Lujan*, 504 U.S. at 560.

Absent such an allegation, the next step in the Court's inquiry is to determine whether Plaintiff has sufficiently pleaded that she faces a "risk of real harm" that is likely to occur in the future. *Spokeo*, 136 S. Ct. at 1549. Despite the fact that she made no allegation to this effect in her Complaint, Plaintiff has attempted to bolster her position in this regard in her response brief on standing.

Plaintiff contends that "the failure to communicate that a disputed debt is disputed . . . presents a risk of harm to the consumer sufficient to create Article III standing." (Pl.'s Resp. to Def.'s Mem. on Standing 11.) To support this proposition, Plaintiff cites two cases—*Wilhelm v. Credico Inc.*, 519 F.3d 416 (8th Cir. 2008), and *Gomez v. Portfolio Recover Assocs. LLC*, No. 15C4499, 2016 WL 3387158 (N.D. Ill. June 20, 2016)—which emphasize the potential impact that omitting a proper notation can have on a debtor when a debt

collector reports a debt to a credit bureau with knowledge that the debt is disputed. While the Court recognizes both the importance of this requirement under the FDCPA and the possible effect that a violation could have on a consumer's credit score, such a violation does not mean *ipso facto* that the debtor is likely to suffer a future risk of harm.

The Court finds that the Fourth Circuit's recent decision in *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017), adds instructive clarity to the "risk of future harm" analysis. The teachings of *Beck* are subtle but substantive in assessing the harm necessary to support subject-matter jurisdiction.

In *Beck*, the court consolidated two cases that involved data breaches at the Dorn Veterans Affairs Medical Center ("Dorn VAMC") in Columbia, South Carolina. *Id.* at 267–68. The plaintiffs alleged that both data breaches constituted violations of the Privacy Act. *Id.* at 266–68. However, they did not "allege that Dorn VAMC's violations of the Privacy Act alone constitute[d] an Article III injury-in-fact." *Id.* at 271 n.4. Rather, the plaintiffs asserted that they suffered concrete injury from the future risk of harm of identity theft. *Id.* at 266–67.

The Fourth Circuit found that the plaintiff's speculative allegations were "insufficient to establish a 'substantial risk' of harm" necessary to show concrete injury. *Id.* at 275. Consequently, it held that plaintiffs' abstract claim of harm was inadequate to confer standing. *Id.* at 276–67.

The Court concludes that Plaintiff has attempted to make similarly speculative claims in her response brief on standing and has pleaded no facts in her Complaint to support any reasonable inference that she faces an impending risk of actual harm. Thus, the Court finds that Plaintiff cannot claim standing on this ground, either.

7

Therefore, the lone remaining avenue for Plaintiff to assert standing is if she can demonstrate that the statutory provisions alleged to have been violated in her Complaint are of the type where the legislature has codified causes of action with intangible harms where recovery was long permitted at common law. *See Spokeo*, 136 S. Ct. at 1549.

"In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* Therefore, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.*

When Congress enacted the FDCPA, it endeavored "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). In doing so, Congress specifically stated that "the failure to communicate that a disputed debt is disputed" was conduct that violated the Act. 15 U.S.C. § 1692e(8).

However, as the Supreme Court held in *Spokeo*, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549; *see also Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1003 (11th Cir. 2016) ("[T]he requirement of concreteness under Article III is not satisfied every time a statute creates a legal obligation and grants a private right of action for its violation. A plaintiff must suffer some harm or risk of harm from the statutory violation to invoke the jurisdiction of a federal court." (internal citation omitted)). Thus, the Supreme Court made clear that "Article III standing requires a concrete

8

injury *even in the context of a statutory violation.*" *Spokeo*, 136 S. Ct. at 1549 (emphasis added).

Nevertheless, Plaintiff contends that "a violation of the FDCPA *per se* constitutes a concrete injury enough to invoke Article III standing." (Pl.'s Resp. to Def.'s Mem. on Standing 7 (citing *Clark v. Trans Union, LLC*, Civil Action No. 3:15cv391, 2017 WL 814252, at *2 (E.D. Va. Mar. 1, 2017) ("The violation of a procedural right granted by statute *can* be sufficient in some circumstances to establish an injury in fact." (emphasis added, internal quotation marks and citation omitted))).) In support of this broad assertion, Plaintiff cites a recent decision out of the Alexandria Division of this District, *Biber v. Pioneer Credit Recovery, Inc.*, Case No. 1:16-cv-804, 2017 WL 118037 (E.D. Va. Jan. 11, 2017).

The plaintiffs in *Biber* brought a putative class action against a defendant debt collector, asserting that it had violated the FDCPA by sending letters to debtors that mislead them into believing that their wages were about to be garnished if they did not pay their student loans. *Id.* at *1–2. When ruling on the defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the *Biber* court found that, "[n]ot surprisingly, in the wake of *Spokeo*, the overwhelming majority of courts have held that FDCPA claims *similar to Biber's* are sufficient to satisfy Article III's requirement that a plaintiff establish an injury in fact." *Id.* at *3 (emphasis added).

And so, far from issuing a sweeping holding that all "violation[s] of the FDCPA *per se* constitute[] a concrete injury," (Pl.'s Resp. to Def.'s Mem. on Standing 7), the *Biber* court in actuality found only that outrageous behavior similar to that complained of in that case was of the type that other courts have found sufficient to confer Article III standing. Plaintiff has not alleged such egregious conduct in her Complaint. Therefore, upon review, the Court

9

concludes that a more comparable case to the one at hand is *Higgens v. Trident Asset Mgmt.*, Civil Action No. 16-24035, 2017 WL 1230537 (S.D. Fla. Mar. 28, 2017).

In *Higgens*, the district court was confronted with a virtually identical FDCPA complaint to the one Plaintiff has filed in this action.[4] (*Compare* Compl., *with* Reply Br. Ex. A, ECF No. 10-1 (a copy of the *Higgens* complaint).) Finding that the plaintiff had failed to establish that he had standing to bring his claim, the court reiterated that "[a] plaintiff seeking to vindicate a public right embodied in a federal statute . . . must demonstrate that the violation of that public right has caused him a concrete, individual harm distinct from the general population." *Higgens*, 2017 WL 1230537, at *2 (quoting *Spokeo*, 136 S. Ct. at 1553 (Thomas, J., concurring)) (ellipses in original). In other words, "'absent some showing that the plaintiff has suffered a concrete harm particular to him,' the plaintiff cannot enforce a violation of the statute in his own name." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1553 (Thomas, J., concurring)).

Similar to Plaintiff in this case, Higgens only stated that he "ha[d] been damaged" and that he "[was] entitled to damages" in his complaint. (Reply Br. Ex. A, at ¶¶ 15, 18 .) After considering the motion to dismiss, the *Higgens* court concluded that these allegations, alone, were insufficient to demonstrate that he had standing to bring his suit, noting that "[f]rom the face of the complaint, there is simply no indication that Higgens actually suffered any harm as a result of [the defendant's] alleged statutory violation." *Id.*

The Court finds this reasoning convincing and readily applicable to the present

---

[4] The Court also observes that Plaintiff's counsel has filed three other nearly carbon copy Complaints in this District. *See Taylor v. Medical Data Sys., Inc.*, Civil Action No. 3:17-cv-263; *Gathers v. CAB Collection Agency*, Civil Action No. 3:17-cv-261; *Brown v. R&B Corp. of Va.*, Civil Action No. 2:17-cv-107. Of those three, one is awaiting determination on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and the remaining two are awaiting return of service.

Complaint. Moreover, the Court finds that the Fourth Circuit's reasoning in *Beck* is controlling. In that case, the court recognized *Spokeo*'s holding that "some violations of the [FCRA], though 'intangible' harms, may still be sufficiently 'concrete' to establish an Article III injury-in-fact." *Beck*, 848 F.3d at 271 n.4. But the court did not even suggest that the theft of the plaintiffs' personal information resembled a common law invasion of privacy sufficient to create a concrete injury merely by alleging a statutory violation. *See generally id.*

Similarly, in this case, the Court finds that alleging a statutory violation evolving from Defendant's failure to list an account as disputed, without more, is not the type of common law invasion of a right that is sufficient to create the type of concrete injury envisioned by *Spokeo*. Consequently, the Court concludes that the FDCPA violations which Plaintiff alleges do not, by themselves, constitute an injury in fact. Those statutory rights are not the type for which "the law has long permitted recovery." *Spokeo*, 136 S. Ct. at 1549.

In summary, the Court determines that Plaintiff's mere allegation of a bare statutory violation in this case is insufficient to confer standing. This does not mean that Plaintiff could never have standing to bring an action to recover for the FDCPA violations which she alleges. But she must plead a concrete harm in order to satisfy the injury-in-fact requirement of Article III.

### IV. CONCLUSION

Based on the foregoing, this case will be dismissed without prejudice.

An appropriate Order will accompany this Memorandum Opinion.

The clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

/s/
Henry E. Hudson
United States District Judge

Date: April 17, 2017
Richmond, VA